This Opinion is a
Precedent of the TTAB

Mailed: September 10, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*Orange Bang, Inc.*

*v.*

*Olé Mexican Foods, Inc.*

———

Opposition No. 91189001

Cancellation No. 92048698

Cancellation No. 92049127

———

Aaron T. Borrowman of Kelly & Kelley LLP for Orange Bang, Inc.

Paul S. Owens of Paul Owens & Associatesfor Olé Mexican Foods, Inc.

———

Before Seeherman, Kuhlke and Wolfson,
    Administrative Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

This is a consolidated proceeding[1] involving an opposition and two

cancellation actions brought by Orange Bang, Inc. (hereafter "Plaintiff")

---

[1] The history of the consolidation of these proceedings is somewhat convoluted. Cancellation No. 92048698 was filed on January 4, 2008; Cancellation No. 92049127 was filed on April 1, 2008; and the opposition was filed on February 25, 2009. On June 19, 2008, Plaintiff filed a submission in both cancellation proceedings advising

against, respectively, an application by Olé Mexican Foods, Inc. (hereafter

"Defendant") to register OLÉ MEXICAN FOODS and design (shown below)



(hereafter OLÉ MEXICAN FOODS),[2] and to partially cancel Defendant's

Registration No. 3223608 for the mark OLÉ in standard characters[3]

---

the Board that there were six cancellation proceedings, including the two proceedings listed above, that had similar marks and issues. In view thereof, on December 19, 2008, the Board consolidated the six cancellation actions. 19 TTABVUE in Canc. No. 92048698, the then-parent file. Then, on July 20, 2009, the parties stipulated that the cancellation actions that are part of the present proceeding go forward, and that the other cancellation actions be held in suspension, thereby, in effect, severing them from this proceeding. The Board ordered this on September 20, 2009. 29, 30 TTABVUE in Canc. No. 92048698. On March 22, 2012, the Board consolidated the three instant proceedings. 43 TTABVUE in the now-parent file, Opp. 91189001. All references in this opinion to TTABVUE entry numbers subsequent to March 22, 2012 are to entries in the opposition file.

[2] Application Serial No. 77426608, filed March 19, 2008, based on Section 1(a) of the Trademark Act, asserting first use and first in commerce on the goods in Class 29 in December 2007. "The mark consists of a panel shaped design and a cross-shaped background design that includes a bull; the left panel is green, the center panel is white and the right panel is red, with the words "OLÉ MEXICAN FOODS" superimposed on the panel; the cross-shaped background design is yellow, brown and gold and the bull and wording are black." The colors red, white, green, yellow, gold, brown and black are claimed as a feature of the mark. The words MEXICAN FOODS and EST. 1988 have been disclaimed. The application also includes "tortillas" in Class 30.

[3] Registration No. 3223608 issued April 3, 2007 from an application filed November 2, 2004; Section 8 affidavit accepted.

(Cancellation No. 92048698) and Registration No. 3161729 for OLÉ and design,[4] shown below (Cancellation No. 92049127).



Plaintiff opposes registration of OLÉ MEXICAN FOODS only in Class 29, for "dairy and fruit based non-alcoholic food beverages."[5] Plaintiff is seeking, by its amended petitions filed August 30, 2012, to partially cancel both registrations by removing the beverage items, namely, "yogurt-based beverages" in Class 29 and "herbal teas" in Class 30.[6] 45 TTABVUE. Thus, all three cases focus on the beverage items of Defendant.

In the Section 8 affidavit Defendant filed for Registration No. 3161729 on August 9, 2012, it listed, inter alia, "yogurt-based beverages" and "herbal teas" as goods to be deleted, while the Section 8 affidavit Defendant filed for Registration No. 3223608 listed "herbal teas" as goods to be deleted. Therefore, the registrations currently do not include these beverages. The effect of these deletions is discussed *infra*.

---

[4] Registration No. 3161729 issued October 24, 2006, from an application filed March 26, 2005; Section 8 affidavit accepted. "The mark consists of the word OLÉ in red letters on a curved green background. Underneath on the left and right sides are chevrons in red, white, and green. The foreign wording in the mark translates into English as Bravo."

[5] The application also includes "tortillas" in Class 30.

[6] Both registrations also include various "Mexican style food products."

**The Pleadings**

The ground asserted by Plaintiff in these consolidated proceedings is likelihood of confusion. Plaintiff has alleged that since 1981, prior to Defendant's use of its marks, Plaintiff has used the mark OLÉ in association with beverages, namely fruit juice, fruit flavored, herbal flavored, and milk-based beverages; and that it is the owner of Registration No. 3315078 for the mark OLÉ for "rice and milk-based beverages, namely horchata," and "non-alcoholic and non-carbonated fruit juice beverages," and of Application Serial No. 78738452 for OLÉ for various beverages. In its amended petitions to cancel the registrations, 45 TTABVUE, Plaintiff also alleges that Defendant's registrations have been cited as a bar against Plaintiff's pending application Serial No. 78738452.

In its answers to the amended pleadings, Defendant has admitted that Plaintiff is the owner of Registration No. 3315078 for the mark OLÉ, and that Defendant's Registration Nos. 3223608 and 3161729 (the subjects of the cancellation proceedings) were cited, along with four other registrations owned by Defendant, against Plaintiff's Application Serial No. 78738452. 50, 51 TTABVUE. Defendant had previously filed, with its earlier answers/amended answers in the proceedings,[7] counterclaims for partial cancellation of Plaintiff's pleaded Registration No. 3315078 to restrict the identification of goods. Specifically, Defendant alleges that Plaintiff has never

---

[7] 12 TTABVUE in the opposition, 33 TTABVUE in Cancellation Action No. 92048698 (at that time consolidated with Cancellation No. 92049127).

used or has abandoned its mark on ready-to-drink beverages distributed through retail food and grocery stores, supermarkets, mass retailers, superstores, and Mexican sit-down restaurants or taquerias. Therefore, Defendant seeks through its counterclaim[8] to have the identification of goods in Plaintiff's registration, currently "rice and milk-based beverages, namely horchata; and non-alcoholic and non-carbonated fruit juice beverages," restricted to limit the goods to concentrates used in the preparation of fountain drinks sold through beverage dispensers, as follows (changes highlighted):

> **concentrates for** rice and milk-based beverages, namely horchata; and **concentrates for** non-alcoholic and non-carbonated fruit juice beverages, **all for use in the preparation of fountain drinks sold through beverage dispensers**.

Defendant also proposes that the yogurt beverages[9] identified in its own Registration Nos. 3223608 and 3161729 (the subjects of the cancellation actions) be restricted to pre-mixed, ready-to-drink beverages sold off-the-shelf, as follows:

> Mexican style food products, namely, chorizo, queso and cheese dips, canned peppers, dried peppers and chicharrones; and **pre-mixed, ready-to-drink** yogurt-

---

[8] Though filed in multiple proceedings, there is essentially only one counterclaim and we shall refer to it in the singular.

[9] The amended answer and counterclaim in the consolidated cancellation proceeding was filed on January 12, 2010 (33 TTABVUE in then-parent Cancellation No. 92048698). At that time Defendant had not yet filed its Section 8 affidavit in Registration No. 3161729, by which it deleted, *inter alia*, "yogurt-based beverages" and "herbal teas" from its registration, or for Registration No. 3223608, by which it deleted, *inter alia*, "herbal teas."

> based beverages **sold off-the-shelf in individual or multi-serving container[s], excluding sales of concentrates for use in the preparation of fountain drinks** in Class 29.

The respective restrictions set out above constitute an effort by Defendant to allow the Board, under Section 18 of the Trademark Act, to conclude that the parties' registrations, as restricted, could coexist on the register of marks because there would be no likelihood of confusion. Defendant also proposes, in the event the Board finds after trial that the above restrictions to Plaintiff's and Defendant's registrations are not sufficient to avoid a likelihood of confusion, that the identifications in Defendant's registrations with respect to the yogurt-based beverages be even further restricted to limit the channels of trade (changes highlighted):

> pre-mixed, ready-to-drink yogurt-based beverages sold off-the-shelf in multi-serving containers **for sale primarily through retail food and grocery stores, supermarkets, mass retailer, superstores, and Mexican sit-down restaurants or taquerias**, excluding the sales of concentrates for use in the preparation of fountain drinks

and that Plaintiff's Registration No. 3315078 be amended to further limit the channels of trade:

> excluding sale through retail food and grocery stores, supermarkets, mass retailers, superstores, and Mexican sit-down restaurants or taquerias.

The amended counterclaim for the then-consolidated cancellation proceedings was accepted by the Board on March 29, 2010 (38 TTABVUE).

*6*

The above alternative efforts by Defendant to invoke and rely on Section 18 of the Trademark Act involve only the parties' respective registrations. In the opposition, because the goods in Defendant's application include, as beverages, fruit-based beverages and dairy-based beverages (as opposed to only yogurt-based beverages), there is a slight difference in the set of proposed restrictions that Defendant suggests in its amended answer and counterclaim (12 TTABVUE in Op. No. 91189001). Although the proposed restrictions to the form of the beverages and the contingent further restriction to the channels of trade to Plaintiff's Registration No. 3315078 are the same, Defendant proposes that Class 29 in its application be amended to (changes highlighted):

> **pre-mixed, ready-to-drink** dairy and fruit-based non-alcoholic food beverages **sold off-the-shelf in individual or multi-serving containers, excluding sales of concentrates for use in the preparation of fountain drinks**,

or if, after trial, this is found not to be sufficient, Defendant requests that its application in Class 29 be further amended to (changes highlighted):

> pre-mixed, ready-to-drink dairy and fruit-based non-alcoholic food beverages sold off-the-shelf in individual or multi-serving containers **for sale primarily through retail food and grocery stores, supermarkets, mass retailers, superstores, and Mexican sit-down restaurants or taquerias**, excluding sales of concentrates for use in the preparation of fountain drinks.

The Board accepted the amended answer and counterclaim in the opposition in its March 19, 2010 order (21 TTABVUE).[10]

Thus, the operative complaints can be found at 1 TTABVUE for the opposition and 45 TTABVUE for the petitions for cancellation; the answer and counterclaim can be found at 12 TTABVUE for the opposition and 50, 51 TTABVUE for the cancellation actions; and the answer to the counterclaim can be found at 22 TTABVUE (all in parent file 91189001) and in 24 TTABVUE in the then-parent file in the then-consolidated cancellation proceedings.

In summary, this proceeding revolves around the issue of likelihood of confusion regarding the Class 29 beverage items in the parties' registrations and application, and Defendant's attempt to obviate any likelihood of confusion by restrictions to the nature of the parties' beverages and, if necessary, to the respective channels of trade.

**Objections**

Both parties have filed a large number of objections. Defendant's can be found at 86 TTABVUE. We rule on them briefly.

---

[10] After the opposition and cancellation actions were consolidated in the subject proceeding, Plaintiff filed amended cancellation petitions, as set forth above (45 TTABVUE), and Defendant filed answers, again as described above (51, 52 TTABVUE). Although Defendant's amended answers do not reiterate the allegations of the counterclaim, it is clear that the counterclaim in the two cancellation proceedings, set forth at 33 TTABVUE of the then-consolidated cancellation proceedings in Canc. No. 92048698, have been maintained. We treat Plaintiff's answers to the counterclaims at 22 TTABVUE in the opposition and at 24 TTABVUE in the then-consolidated cancellations to be the operative pleadings answering the counterclaim.

Defendant's Objections to Plaintiff's Evidence

Defendant's objection that Plaintiff's Registration No. 3315078 is not of record is overruled. Defendant has counterclaimed to cancel the registration; therefore, it is of record by operation of Trademark Rule 2.122(b)(1) ("the file … of each registration against which a petition or counterclaim for cancellation is filed forms part of the record of the proceeding without any action by the parties"). Defendant has also objected to consideration of the registration for Plaintiff's mark TAMARINDO OLÉ. We find that this registration is not of record, since Plaintiff's witness, David Fox, Plaintiff's president and founder, testified only that Plaintiff has "a US trademark registration for the mark 'Tamarindo Ole'" and that Exhibit 2 to his deposition "show[s] the trademark registration for Tamarindo Ole." 81 TTABVUE 14. Exhibit 2 is a "soft copy" of the registration; it does not show current status and title. There was no testimony as to the current status of the registration, which issued five years before he gave his testimony. *See* Trademark Rule 2.122(d)(2), which lists the procedure for making of record an unpleaded registration owned by a party.[11]

The objection to Exhibit 6 to the Fox testimony is overruled; the exhibit is pages from Plaintiff's website, and was properly authenticated; however, we take note that, as pointed out by Defendant, Mr. Fox testified that the glasses

---

[11] Even if this registration were of record, it would have no effect on the outcome of this proceeding; the registration was not pleaded, nor do we consider the issue of likelihood of confusion based on this registration to have been tried, so the registration would have had very little, if any, probative value.

depicted in the website, which bear Plaintiff's trademark, were never actually in use. Fox disc. dep., 75 TTABVUE 47. Defendant's hearsay objection to Exhibit 30 to Mr. Fox's testimony deposition, a computer-generated report listing sales to grocery stores, and the testimony regarding it, is that the identification of customers as grocery stores was based on information from Plaintiff's route drivers, who actually service the customers. Plaintiff has not shown that it is part of the drivers' regular business duties to identify the nature of the customers on their routes, and therefore information regarding the type of customer would not constitute business records subject to the hearsay exception.[12] Accordingly, to the extent that Mr. Fox's testimony regarding the nature of particular customers that are reflected in Exhibit 30 is based solely on hearsay, i.e., information obtained by Plaintiff's route drivers, that testimony, and the characterization of the customers shown in the exhibit, has been given no consideration.

Finally, the objections to Exhibits A-D in Plaintiff's notice of reliance are overruled. These printouts from third-party websites are admissible for what the printouts show on their face.

Plaintiff's Objections to Defendant's Evidence

As for Plaintiff's objections, we overrule its objections to Defendant's evidence regarding Defendant's use of its marks for non-beverage goods. One

---

[12] We recognize that Plaintiff apparently undertook to have its customers identified as to their nature because of a Board order regarding Defendant's motion to compel. However, this does not transform the information provided by the route drivers into business records.

of the *du Pont* factors is "the variety of goods on which a mark is or is not used." *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973). Accordingly, this evidence is relevant and has been considered. Plaintiff has also objected to the testimony of Rhonda Harper, Defendant's expert, in its entirety, and asks that it be stricken. The Board is reluctant to strike testimony altogether on the basis of substantive objections; rather such objections are considered by the Board in its evaluation of the probative value of the testimony. *Alcatraz Media Inc. v. Chesapeake Marine Tours Inc.*, 107 USPQ2d 1750, 1755 (TTAB 2013). We will not go into an extensive discussion of the case law interpreting Fed. R. Evid. 702 regarding expert witness testimony. In this case we are satisfied that Ms. Harper is an expert in general retail marketing. However, we are not persuaded that she is an expert with respect to the retail beverage industry. For example, she could not answer whether many specific brands of beverages are sold both from fountain dispensers and bottles or cans, including 7-UP, A&W ROOT BEER and DR. PEPPER. We therefore give limited weight to her testimony about the beverage industry and what consumers will think; we also point out that ultimate conclusions of law on the issue of likelihood of confusion are the province of the Board, not of a witness, even an asserted expert witness.

**The Record**

The record includes:
- the pleadings

- the files of Defendant's Application Serial No. 77426608 (the opposed application) and Registrations Nos. 3161729 and 3223608 (subjects of the cancellation actions),[13] and the file of Petitioner's Registration No. 3315078 (the subject of the counterclaim)

- the testimony, with exhibits, of Plaintiff's witness and president, David Fox, and Defendant's witnesses Rhonda Harper, Kimberly Greenway and Veronica Moreno

- Plaintiff's notices of reliance on Internet printouts, Defendant's responses to certain of Plaintiff's discovery requests, and Plaintiff's sales history reports (Exhibit K)[14]

- Defendant's eight notices of reliance on two discovery depositions of David Fox,[15] Plaintiff's responses to Defendant's discovery requests (interrogatories and requests for admission); copies of certain of Defendant's registrations; certain of Defendant's responses to Plaintiff's interrogatories (filed pursuant to Trademark Rule 2.120(j)(5)); and certain documents Defendant provided in response to Plaintiff's document production requests.[16]

---

[13] Because these files are automatically of record by virtue of Trademark Rule 2.122(b)(1), it was unnecessary for Defendant to submit them under its fifth Notice of Reliance.

[14] Sales history reports are not acceptable for submission under notice of reliance, since they are not printed publications or official records under Trademark Rule 2.122(e). However, Defendant has treated them as being of record, see Defendant's main trial brief, 89 TTABVUE 14, so we consider this exhibit as having been stipulated into the record by the parties.

[15] We note that Defendant submitted these discovery depositions in their entireties. Although this is permitted by the rules, we point out that, as opposed to testimony depositions, it benefits both the Board and the parties if the propounding party culls unimportant portions of discovery depositions and submits only the relevant portions. *See* Trademark Rule 2.120(j)(3)(i); *Sports Authority Michigan Inc. v. PC Authority Inc.*, 63 USPQ2d 1781, 1787 (TTAB 2001) ("[E]ach party has submitted discovery deposition transcripts in toto, i.e., has made no apparent effort to identify and introduce only those portions that are relevant to our determination of the pleaded claims. While not improper, it is more effective to file only those portions that are relevant and explain their relevancy in the notice of reliance"); Trademark Trial and Appeal Board Manual of Procedure (TBMP) § 704.09 (2015) ("In order to avoid creating an overly large record of irrelevant evidence, parties should, where appropriate, file only those portions of a discovery deposition transcript that are relevant to the pleaded claims").

[16] Documents provided in response to production requests may not be made of record by notice of reliance, *see* Trademark Rule 2.120(j)(3)(ii), and in any event the responding party may not make its own discovery responses of record except when necessary to make not misleading the discovery responses submitted by the

**Additional Preliminary Matters Regarding Issues or Evidence**

**A.** In its trial brief Defendant makes the claim that Plaintiff's president filed a materially false Section 15 affidavit, a charge to which Plaintiff responded in its reply brief. What is clearly attorney argument has been proffered instead of fact. To the extent that Defendant is attempting to assert another ground for its counterclaim, such was neither pleaded nor tried. We have given no consideration to the arguments made by either attorney on this point.[17] Defendant also takes issue, in its trial brief, with the specimens Plaintiff submitted in prosecuting the application underlying its pleaded registration. Even if this issue had been tried (which it was not), the acceptability of specimens is an ex parte matter. *See Century 21 Real Estate Corp. v. Century Life of America,* 10 USPQ2d 2034, 2035 (TTAB 1989).

**B.** Plaintiff submitted its entire notice of reliance under seal. Board proceedings are public, and therefore only truly confidential material should be filed under seal. A rule of reasonableness dictates what information should be redacted, and only in very rare instances should an entire submission be deemed confidential. *See* TMBP § 703.01(p) and cases cited therein. Clearly many of the exhibits, such as third-party webpages, do not constitute

---

inquiring party. However, Plaintiff has treated them as being of record, so we consider them as having been stipulated into the record.

[17] We note that Plaintiff, in explaining why it filed a Section 15 affidavit for its registration, makes the statement that the Board has the power to rectify the Section 15 component. Reply brief, 91 TTABVUE 11. Because the validity of the Section 15 affidavit is not before us, we do not have such authority. Therefore, if Plaintiff determines that the Section 15 affidavit was filed in error, Plaintiff may wish to file a petition to the Commissioner.

confidential material. In view thereof, **Plaintiff is allowed THIRTY (30) days from the mailing date of this decision to file a copy of its notice of reliance for the public record, with only truly confidential material redacted, failing which all of the exhibits will become part of the public record.**

**C.** There is a similar problem with Defendant's submissions. All of the testimony depositions, with exhibits, submitted by Defendant were marked "confidential," and Defendant failed to submit redacted copies. It is quite clear that the testimony depositions contain non-confidential material, since Defendant repeated much of the testimony in unredacted portions of its trial brief filed for the public record. Accordingly, **Defendant is allowed THIRTY (30) days from the mailing date of this decision to file copies of the testimony depositions and exhibits of Veronica Moreno, Kimberly Greenway and Rhonda Harper, with only truly confidential material redacted, failing which the entirety of the transcripts will become part of the public record.**

**D.** During the course of this proceeding, Defendant filed Section 8 affidavits in connection with its registrations at issue in the two cancellation proceedings. These affidavits did not include a statement of continuing use for, *inter alia*, "yogurt-based beverages" and "herbal teas" in Registration No. 3161729, and "herbal teas" in Registration No. 3223608, thereby effectively cancelling them from the registrations. These are the goods that Plaintiff's

petitions for partial cancellation seek to have deleted from the identifications in the respective registrations.[18] As a result, Defendant asserts that Cancellation No. 92049127 is moot, and that the claim regarding herbal teas in Cancellation No. 92048698 is moot as well.

We do not agree with Defendant's mootness argument. Trademark Rule 2.134(b) provides that, after the commencement of a cancellation proceeding, if it comes to the attention of the Board that the respondent has permitted its involved registration to be cancelled under Section 8 of the Act, an order may be issued allowing the respondent time in which to show cause why such cancellation should not be deemed to be the equivalent of a cancellation by request of the respondent without consent and should not result in entry of judgment against respondent. "The purpose of 37 CFR § 2.134(b) [Rule 2.134(b)], and the policy underlying the issuance of a show cause order, is to prevent a cancellation proceeding respondent whose subject registration comes due, during the course of the proceeding, for a § 8 or § 9 affidavit, … from being able to moot the proceeding, and avoid judgment, by deliberately failing to file the required affidavits … ." *See* TBMP § 602.02(b) and cases cited therein. Here, the deletions requested by Defendant in its Section 8 affidavits were not brought to the attention of the Board prior to or during trial. At this point, with briefing having been completed, there would be no point in issuing an order to show cause; it is clear that the deletion of the

---

[18] Registration No. 3223608 still contains "yogurt-based beverages."

involved goods from the Section 8 declarations was deliberate, and not the result of mistake or inadvertence, and that Defendant believed that such deletion would moot or partially moot the subject actions. *See* Defendant's Trial brief, 89 TTABVUE 12.

We recognize that Trademark Rule 2.134(b) refers to the cancellation of a *registration*. Here Plaintiff is not attempting to cancel each registration in its entirety, but to cancel only specific items in Defendant's registrations, and these items are among those that Defendant requested to have deleted as part of its Section 8 filings. Nonetheless, the purpose behind Rule 2.134(b) is to prevent a defendant from mooting a cancellation action. Therefore, we find that Rule 2.134(b) applies to the present situation, where the cancellation proceeding is to cancel only certain goods from a registration, and the defendant deletes those specific goods from its registration as part of its filing a Section 8 affidavit in order to moot the proceeding.

We therefore grant the petitions to cancel the registrations insofar as these deleted goods are concerned. As a result, our decision herein is a final judgment as to Plaintiff's pleaded claims with respect to the goods at issue that Plaintiff sought to cancel and Defendant deleted from its registrations via the Section 8 affidavits it filed during the course of these proceedings.

**Standing**

In its answers to the petitions for cancellation, 50, 51 TTABVUE, Defendant has admitted "that on July 7, 2007, the Examining Attorney cited

[Defendant's] Registration Nos. 3,223,608 and 3,161,729, along with four other registrations owned by [Defendant] for marks incorporating the mark OLÉ, against Orange Bang's Application No. 78/738,452 on the ground of likelihood of confusion." ¶ 4. This is sufficient to establish that Plaintiff has standing to bring the cancellation actions. *ShutEmDown Sports Inc. v. Lacy*, 102 USPQ2d 1036, 1041 (TTAB 2012) (pending application refused registration based on a likelihood of confusion with mark in respondent's registration shows petitioner has real interest in proceeding, and has standing).

With respect to the opposition, Plaintiff's ownership of pleaded Registration No. 3315078 has been admitted by Defendant, and is the subject of Defendant's counterclaim. This registration is for the mark OLÉ for rice and milk-based beverages, namely horchata, and non-carbonated fruit juice beverages; Defendant's applied-for mark is for OLÉ MEXICAN FOODS and design for, inter alia, dairy and fruit based beverages. In view of this registration, Plaintiff has established its real interest in the proceeding, and therefore its standing. *See Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842 (Fed. Cir. 2000); *Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185 (CCPA 1982).

Finally, based on the fact that Plaintiff's pleaded registration has been asserted in the opposition and the cancellation proceedings, Defendant has

established its standing as plaintiff in the counterclaim. *See DAK Industries Inc. v. Daiichi Kosho Co.*, 35 USPQ2d 1434, 1438 (TTAB 1995).

**Counterclaim**

Defendant seeks restriction of Plaintiff's Registration No. 3315078, pleaded by Plaintiff in both the notice of opposition and the petitions for cancellation. In this counterclaim, Defendant alleges that it began using the trade name and trademark OLÉ in 1988 in connection with tortillas and tortilla chips, and then expanded use of the mark to other Mexican style food products "sold through supermarkets and other retail food stores for later preparation and consumption off the premises";[19] that Plaintiff uses its OLÉ mark only in connection with concentrates for use in the preparation of fountain drinks sold through beverage dispensers, and that the identification of goods in Plaintiff's registration (rice and milk-based beverages, namely horchata; and non-alcoholic and non-carbonated fruit juice beverages) is overly broad; that Plaintiff has never used its OLÉ mark on ready-to-drink beverages distributed through retail food and grocery stores, supermarkets, mass retailers, superstores and Mexican sit-down restaurants or taquerias or, if it has, then it has abandoned its use of its mark through such channels of trade or to such classes of consumers. As a result, Defendant seeks a restriction of Plaintiff's registration to essentially limit the description of

---

[19] The quoted language appears in the counterclaim filed in the opposition; in the counterclaim in the cancellation proceedings Defendant uses the phrase "sold through retail food and grocery stores, supermarkets, mass retailers, superstores, and Mexican sit-down restaurants or taquerias."

goods to concentrates for the identified beverages, for "use in the preparation of fountain drinks sold through beverage dispensers," while at the same time offering a restriction of the goods in its own application and registrations to specify that they would be "pre-mixed, ready-to-drink" beverages "sold off-the-shelf in individual or multi-serving containers, excluding sales of concentrates for use in the preparation of fountain drinks." Defendant also requests that, in the event that the foregoing restrictions "are not sufficient in themselves to avoid a likelihood of confusion," that its identification of goods "be further or alternatively amended," answer to opposition, ¶ 21, 12 TTABVUE 9, to restrict the channels of trade, "for sale primarily through retail food and grocery stores, supermarkets, mass retailers, superstores, and Mexican sit-down restaurants or taquerias" and that the identification of Plaintiff's identification of goods "be further or alternatively amended" to restrict the channels of trade to exclude "sale through retail food and grocery stores, supermarkets, mass retailers, superstores, and Mexican sit-down restaurants or taquerias." That is, Defendant asks that the dairy beverages identified in both its registrations and application and in Plaintiff's registration be restricted as to "form," and if that restriction is not sufficient to avoid likelihood of confusion, that they also be restricted as to channels of trade.

In the Board's order of August 24, 2011, 37 TTABVUE, which denied the parties' cross motions for summary judgment in the opposition (the

proceedings had not yet been consolidated), the Board explained that, after trial, we would first decide the counterclaim for partial cancellation and then would decide the opposition depending on what happened with the counterclaim, i.e., if the counterclaim were granted, the opposition would be decided with the description of Plaintiff's goods as restricted by the counterclaim, in association with Defendant's proposed amendment of its identification of goods, while if the counterclaim were dismissed, we would determine the opposition based on the original identification of goods in Plaintiff's registration, but with the proposed amendments to Defendant's identification of goods.

The present case, which now includes not only the opposition but the two cancellation proceedings, does not involve a typical counterclaim, which seeks to cancel a registration in its entirety. Instead, Defendant seeks to restrict the goods in Plaintiff's registration by "form" and by channels of trade, with a concomitant limitation in the form of the goods and channels of trade in Defendant's application and registrations. When such a restriction of a registration is sought, Section 18 of the Trademark Act, 15 U.S.C. § 1068, gives the Board the authority to modify the registration by limiting the goods or services specified therein, or otherwise restrict or rectify with respect to the register the registration of a registered mark. In order to succeed in restricting a registration by using the provisions of Section 18, the plaintiff or counterclaim plaintiff must show that the entry of the proposed restriction to

the goods in the defendant's registration will avoid a finding of likelihood of confusion, and that the defendant or counterclaim defendant is not using its mark on those goods that will be effectively excluded from the registration if the proposed restriction is entered. *See Eurostar Inc. v. "Euro-Star" Reitmoden GmbH & Co.*, 34 USPQ2d 1266, 1270 (TTAB 1994).

Because of these general principles regarding Section 18, and the fact that the proposed restrictions to both Plaintiff's registration and Defendant's registrations and application were clearly meant by Defendant to be considered together, we will not follow the procedure set forth in the Board's August 24, 2011 order to the letter. Rather, it is most efficient to decide whether the two sets of restrictions, first as to form and, if necessary as to channels of trade, proposed by Defendant to both Plaintiff's registration and Defendant's application and registrations, will avoid a finding of likelihood of confusion.

First, we note that the marks are identical or substantially identical. Plaintiff's pleaded registration is for OLÉ in standard characters; Defendant's Registration No. 3223608 is also for OLÉ in standard characters. As for Defendant's Application Serial No. 77426608 for OLÉ MEXICAN FOODS and design, although this mark has the additional descriptive wording MEXICAN FOODS and the design of a bull, as well as some geometric background designs, the dominant element of the mark is the word OLÉ, which is most prominent visually, and is the only distinctive word in

the mark. Supporting this view is Ms. Moreno's testimony that although Defendant's original mark included the words OLÉ MEXICAN FOODS, consumers always called it OLÉ. 90 TTABVUE.[20]

Defendant has argued differences in the marks based on how the evidence shows the marks to be actually used. It appears that Defendant has taken this position because it believes that Plaintiff's pleaded registration is not of record, and therefore that Plaintiff may rely only on its common law rights. However, as previously noted, Defendant has counterclaimed to cancel Plaintiff's registration by its attempt to modify the registration, and thereby has made the registration of record. Therefore, it can be relied on by any party to the proceeding. Thus, we consider the marks as they appear in both Plaintiff's and Defendant's registrations and Defendant's application and, as noted, find them to be either identical or substantially the same.

---

[20] Because Defendant marked all of its testimony as "confidential," and did not submit redacted copies, the testimony does not appear in TTABVUE, the public record of Board proceedings. Therefore, in citations to the testimony of Defendant's witnesses Moreno, Greenway and Harper, we provide only the TTABVUE entry number of the confidential filing.

As previously noted, because Defendant deleted all of the goods which are the subject of the petition to cancel Defendant's Registration No. 3161729 without Plaintiff's consent, the petition to cancel this registration as to those goods is granted. In any event, that mark, too, is confusingly similar to Plaintiff's registered mark. The word OLÉ, which is superimposed on a green fan-like background with some arrow designs on either side, is clearly the dominant part of the mark, as it is the only part of the mark that can be articulated. *See In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (if a mark comprises both a word and a design, the word is normally accorded greater weight because it would be used by purchasers to request the goods). Further, Defendant's president and co-owner, Veronica Moreno, testified that the intention in creating this mark was to emphasize the word OLÉ. 90 TTABVUE.

Given this similarity of the marks, we consider whether the restrictions that Defendant has proposed to Plaintiff's registration and its own registration[21] and application will avoid a finding of likelihood of confusion. The first restriction Defendant suggests is as to the form of the parties' goods, so that Plaintiff's beverages would be limited to concentrates for beverages used for the preparation of fountain drinks, rather than beverages per se, while Defendant's beverages would be identified as pre-packaged ready-to-drink beverages sold off-the-shelf, as follows:

> *Proposed identification for Plaintiff's beverage goods*: Concentrates for rice and milk-based beverages, namely horchata; and concentrates for non-alcoholic and non-carbonated fruit juice beverages, all for use in the preparation of fountain drinks sold through beverage dispensers;
>
> *Proposed identification for Defendant's beverage goods in the application*: Pre-mixed, ready-to-drink dairy and fruit-based non-alcoholic food beverages sold off-the shelf in individual or multi-serving containers, excluding sales of concentrates for use in the preparation of fountain drinks.
>
> *Proposed identification for Defendant's beverage goods in Registration No. 3223608*: pre-mixed, ready-to-drink yogurt-based beverages sold off-the-shelf in multi-serving containers, excluding the sales of concentrates for use in the preparation of fountain drinks.

It is clear that Plaintiff sells concentrates for beverages, rather than pre-mixed, ready-to-drink beverages, to retailers, and that the finished beverages are delivered to the ultimate consumers through fountain dispensers and

---

[21] Because Defendant deleted "yogurt-based beverages" from Registration No. 3161729 when it filed its Section 8 affidavit, its proposed restriction to the identification for "yogurt-based beverages" now applies only to Registration No. 3223608.

"visual" dispensers,[22] rather than in pre-packaged individual or multi-serving containers that one would take "off-the-shelf" of a retail store. However, merely because there are differences in the form of the products does not necessarily mean that restricting the identification of goods in this manner will avoid confusion. Although Plaintiff's goods may be sold to retailers as concentrate, the retailers then mix the concentrate with water and sell it under Plaintiff's mark as a ready-to-drink beverage, so that the ultimate consumer of the product views the mark as applied to a beverage, not a concentrate. See Exhibits 8 and 9 to Fox test. for examples of bowl dispensers and fountain dispensers of Plaintiff's OLÉ beverages. 81 TTABVUE 207, 209. For example, a consumer can go to a fountain dispenser with various "spigots" marked with the brand and flavor of beverage, including Plaintiff's beverages, and place a cup under a spigot and a ready-to-drink beverage will be delivered to the consumer. Fox test., 81 TTABVUE 31-34. *Cf. J.C. Hall Co. v. Hallmark Cards, Inc.*, 340 F.2d 960, 144 USPQ 435, 438 (CCPA 1965), in which the Court found similarity of blank checks and greeting cards in part because, although the blank checks were sold only to banks and not the general public, the utility of the checks was in their dissemination to and use by the customers of the bank.

---

[22] These dispensers are large plastic containers in which the concentrate has already been mixed with water to form a finished drink, as opposed to a fountain dispenser in which the concentrate mixes with water as it is being dispensed.

In view of this, the consumer is likely to regard the fountain-dispensed beverage as merely another form of "packaging" of the beverage, as opposed to being only a concentrate that is subsequently mixed with water, in the same way that he or she would regard a can or a bottle of a beverage as different forms of packaging of the same beverage. Further, the record shows that companies sell both fountain drinks and canned and bottled beverages under the same marks. Defendant's own expert witness, Rhonda Harper, testified that the following brands are used for beverages sold both through fountain dispensers and in bottled form: COCA-COLA, PEPSI, SPRITE, MOUNTAIN DEW, GATORADE, MINUTE MAID LEMONADE, TROPICANA PINK LEMONADE and HI-C. 87 TTABVUE. Plaintiff also submitted website pages in which third-parties' products are shown as being available through fountain dispensers and in pre-packaged containers. 54 TTABVUE 7-78. Although Defendant's expert witness testified that there is a difference in the marketing practices of large companies such as Coca-Cola and small regional beverage companies, we see no basis upon which to find that consumers would believe, upon seeing the identical or substantially similar mark for a fountain beverage and a pre-packaged beverage, that the beverages would emanate from different sources because they are regional, as opposed to national, brands. First, it is not clear whether consumers would regard brands that they are familiar with as being regional brands, or, conversely, whether they would recognize some brands that they are familiar

with as being national brands. Second, even if we were to accept that Plaintiff's mark would be viewed as a regional brand, Plaintiff has submitted evidence that smaller companies' beverages are advertised as being sold both through fountain dispensers and in pre-packaged form. See Exhibit D to Plaintiff's notice of reliance, 54 TTABVUE 67-78, for beverages offered under the mark JUICY WHIP.

Accordingly, we find that the restriction to the form of Plaintiff's identified beverages (along with the restriction to the form of Defendant's identified beverages) would not serve to avoid likelihood of confusion. Accordingly, Defendant's proposed restriction pursuant to Section 18 to the identification in terms of the form of the goods is denied.

Defendant has also proposed, if the restriction as to the form of the goods is not sufficient to avoid confusion, a restriction regarding both Plaintiff's and Defendant's channels of trade. In addition to the restriction as to the form of Plaintiff's goods, Defendant asks that the identification be further restricted to exclude sales through retail food and grocery stores, supermarkets, mass retailers, superstores, and Mexican sit-down restaurants or taquerias, while in turn it would further restrict the challenged goods in the identifications of its registration and application to sales primarily through retail food and grocery stores, supermarkets, mass retailers, superstores, and Mexican sit-down restaurants or taquerias.

We find that Defendant's proposed restriction to the channels of trade of Plaintiff's registration (with the concomitant restriction to its own channels of trade) fails to meet the requirements of *Eurostar*. First, Defendant has not shown that Plaintiff does not sell its goods in some of the channels of trade that Defendant would exclude from Plaintiff's registration. Although we have not given consideration to the characterizations of customers provided by Plaintiff's route drivers, as discussed *supra*, Plaintiff's president testified as to his own knowledge regarding some of the customers. In particular, he testified that Plaintiff's beverages are sold through a food stand in a mass retailer/superstore.[23] Plaintiff also submitted printouts of its records showing sales to, inter alia, restaurants.[24] We also note that Defendant's proposed restriction, to "sales *primarily* through retail food and grocery stores, supermarkets, mass retailers, superstores, and Mexican sit-down restaurants or taquerias," would not prevent Defendant from selling its goods in other channels of trade, including the trade channels to which Defendant would have Plaintiff restrict its goods.

In any event, even if we were to find that Plaintiff and Defendant sell their goods in separate channels of trade, that would not be sufficient to obviate a finding of likelihood of confusion. Despite the differences in the channels of trade, the same consumers are likely to encounter both parties'

---

[23] Defendant's witness Ms. Moreno described this same superstore as a grocery store. 90 TTABVUE.

[24] These printouts were submitted under seal, and therefore we will not identify the specific customers.

goods because they may shop in a supermarket and eat in a fast food restaurant or in a "sit-down" restaurant, or buy a fountain beverage in a convenience store and shop in a grocery store or a superstore. So, for example, a consumer who gets Plaintiff's OLÉ beverage from a fountain dispenser in a fast food restaurant and later sees OLÉ prepackaged beverages in a supermarket is likely to assume that these products emanate from the same source.

In view of our finding that the restrictions proposed by Defendant to Plaintiff's registration (along with the restrictions proposed to Defendant's own registration and application) are not sufficient to avoid a likelihood of confusion, we dismiss Defendant's counterclaim to restrict Plaintiff's registration pursuant to Section 18. It appears that Defendant's proposed restrictions to the identifications in its application and registration, as to both form and trade channels, was offered on the assumption that Plaintiff's registration would be restricted, and was contingent on that occurring. *See Embarcadero Technologies Inc. v. RStudio Inc.*, 105 USPQ2d 1825 (TTAB 2013) (Section 18 proposed amendments may be asserted in the alternative). Because we have denied the counterclaim to restrict the registration, we proceed with our analysis of Plaintiff's likelihood of confusion claim based on Defendant's unrestricted identifications; however, even if Defendant's registration and application were restricted it would not affect the result

herein, since Plaintiff's identification is not restricted as to form or channels of trade.

**Plaintiff's Claims**

We now turn to Plaintiff's petition to partially cancel Defendant's registrations and its opposition to Class 29 of Defendant's application. As noted previously, because Defendant had, in filing its Section 8 affidavits, deleted from its registrations certain goods that Plaintiff had sought to cancel without Plaintiff's consent, we grant, as requested, the petition to partially cancel Registration No. 3161729 (the subject of Cancellation No. 92049127) for OLÉ and design by deletion of "yogurt-based beverages" in Class 29 and "herbal teas" in Class 30; and we grant the petition to partially cancel Registration No. 3223608 (the subject of Cancellation No. 92048698) for OLÉ by deletion of "herbal teas" in Class 30. As a result, the only outstanding issues before us are the petition to cancel "yogurt-based beverages" from Registration No. 3223608 for OLÉ, and the opposition to the mark OLÉ MEXICAN FOODS and design for the goods in Class 29, "dairy and fruit based non-alcoholic food beverages."

With respect to the cancellation of yogurt-based beverages from Registration No. 3223608, Defendant has asserted in its main brief that Plaintiff has failed to state a claim for partial cancellation. Apparently Defendant treats Plaintiff's claim as having been brought solely under Section 18 of the Trademark Act, and therefore it contends that Plaintiff

must prove (1) that "the proposed restriction under Section 18" will avoid a finding of likelihood of confusion, and (2) that Defendant is not using its mark on the goods that would be excluded from the registration if "the proposed restriction" is entered. 89 TTABVUE 52. Although, in its motion to amend the petition to cancel to limit its petition to the beverage goods identified in Defendant's registration, 45 TTABVUE, Plaintiff referred to Section 18 of the Act, the petition itself makes clear that the ground asserted by Plaintiff is likelihood of confusion. See ¶ 8 ("Petitioner asserts that Registrant's OLÉ mark is likely to be confused with Petitioner's OLÉ mark when used in connection with beverage goods"). Moreover, because Plaintiff seeks to strike from Defendant's registration goods as listed therein, there is no need for Plaintiff to rely on Section 18. *See Johnson & Johnson v. Obschestvo s Ogranitchennoy*, 104 USPQ2d 2037, 2039 (TTAB 2012); *DAK Industries Inc. v. Daiichi Kosho Co.*, 35 USPQ2d at 1437 ("Because applicant [the counterclaim petitioner] seeks to strike from opposer's registration goods specifically listed therein, applicant [as the plaintiff] need not plead (as was required in *Eurostar*) that a finding of likelihood of confusion will be avoided by the restriction it seeks."). Plaintiff's claim is a straightforward claim to cancel specific beverage items from Defendant's registration, not to restrict the goods by their form/packaging or channels of trade, as Defendant's Section 18 counterclaim seeks to do. The ground for cancellation is likelihood of confusion, a ground that is available to Plaintiff under Section 14 of the

Act because it brought its petition on January 4, 2008, just nine months after the registration issued on April 3, 2007.

There are two elements to proving the ground of likelihood of confusion: priority and likelihood of confusion.

Priority

With respect to the opposition, because Plaintiff's pleaded registration is of record, priority is not in issue as to the goods identified in Plaintiff's registration. *See King Candy Company v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974). In any event, Plaintiff began use of its mark on beverages in 1981, well before Defendant began use of the opposed mark. Fox disc. and test. deps., 61 TTABVUE 119, 81 TTABVUE 11. There is some inconsistency about when Defendant first began using its mark, its president having testified variously that Defendant did not develop the mark until 2007, and that it used this mark for a yogurt-based beverage "in 2005, close to that time." Moreno test., 90 TTABVUE. In any event, Plaintiff's use of its mark is much earlier than any of the dates for which Defendant claims use of the mark.

As for the cancellation proceeding, because both Plaintiff and Defendant own registrations, priority is in issue, and therefore Plaintiff has the burden to prove its priority. *Brewski Beer Co. v. Brewski Brothers Inc.*, 47 USPQ2d

1281 (TTAB 1998).[25] There is no question that Plaintiff is the prior user of the mark OLÉ for beverages. As stated above, the record shows that Plaintiff began using this mark on beverages in 1981. Defendant did not provide evidence of any use prior to 1988, when the present owners of the company bought it; Ms. Moreno, the president and co-owner, testified that the company they bought was "very small" and was making only tortilla chips and salsa. 90 TTABVUE. Ms. Moreno could not recall exactly when Defendant made anything that might be characterized as a beverage, and in the absence of clear evidence of use, Defendant would be entitled to rely only on the November 2, 2004 filing date of the application that resulted in the OLÉ registration, which is after the filing date of the application underlying Plaintiff's registration and after Plaintiff's demonstrated first use. In any event, it is clear that prior to 2001 Defendant was not selling any beverage products. Greenway test., 88 TTABVUE.

Likelihood of confusion

Our determination of the issue of likelihood of confusion is based on an analysis of all of the probative facts in evidence that are relevant to the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 177 USPQ at 567. *See also*, *In re Majestic Distilling Co., Inc.*, 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003).

---

[25] Defendant appears to argue that neither party in a cancellation proceeding can rely on its registration, and can rely only on its common law rights. This is not a correct statement of the law.

Both Plaintiff's registered mark OLÉ and Defendant's registered mark OLÉ are legally identical. Because they are standard character marks, and therefore are not limited as to style or font, they can be depicted in the same manner. As for Defendant's applied-for mark, shown below, Defendant has acknowledged that "The word mark OLÉ is the dominant element of both the OLÉ logo and the OLÉ MEXICAN FOODS Logo [the latter being the way Defendant refers to the applied-for mark] and together create the continuing commercial impression of Defendant's OLÉ brand." Defendant's main brief, 89 TTABVUE 17.



We agree that the word OLÉ is the dominant element. It dominates the mark visually by its size and placement. Further, the words MEXICAN FOODS are descriptive of (if not generic for) Defendant's goods, and EST. 1988, is, because of its size, likely not to be noticed and, in any event, would be viewed as describing when Defendant began operating. Thus, the primary source-identifying part of the mark is the word OLÉ. The design element of a bull and the geometric background elements are not sufficient to distinguish the mark from Plaintiff's mark OLÉ because they would not be articulated by

consumers in referring to the goods, and by its very nature a background element or carrier would not be the dominant part of a mark. *See In re Viterra Inc.*, 101 USPQ2d at 1908; *In re Hughes Furniture Indus., Inc.*, 114 USPQ2d 1134, 1138 (TTAB 2015) (design feature of mark that merely serves as carrier does not distinguish applicant's mark from cited mark).

Although Defendant has, as indicated above, acknowledged that OLÉ is the dominant element of the applied-for mark, it also argues that its mark creates a different commercial impression from Plaintiff's mark. This argument is based, in part, on the misconception that Plaintiff may only rely on its common law rights in the particular manner in which it uses its mark; however, as previously noted, Plaintiff may rely on its registration for OLÉ in standard characters, and a registered mark in standard characters is not limited to any particular display. *In re Viterra Inc.*, 101 USPQ2d at 1909, 1910; *Citigroup v. Capital City Bank Group, Inc.*, 637 F.3d 1344, 98 USPQ2d 1253, 1259 (Fed. Cir. 2011). Thus, Defendant's arguments about the different design elements and lettering styles in the parties' marks as actually used are not persuasive. Nor are we persuaded by Defendant's argument that MEXICAN FOODS in Defendant's mark distinguishes the marks; even if consumers were to articulate these words (and despite Defendant's unsupported assertion,[26] it is not clear that they would articulate words that are so highly descriptive, if not generic, of the goods), the additional words do

---

[26] "Consumers are likely to use all three words—'Olé Mexican Foods'—when referring to Defendant's Logo." Brief, 89 TTABVUE 33.

*34*

not affect the identical pronunciation of the source-identifying portion of Defendant's mark and the entirety of Plaintiff's mark.

Nor are we persuaded by Defendant's argument that the marks have different meanings and commercial impressions because the inclusion of EST. 1988 and OLÉ MEXICAN FOODS in Defendant's mark identifies the company that is the source of the products, while Plaintiff's mark OLÉ would be understood only as an exclamation of approval. Again, because of the highly descriptive/generic nature of MEXICAN FOODS for Mexican food products, consumers are likely to regard this term as describing the foods, rather than to view OLÉ MEXICAN FOODS as the name of the company that was established in 1988. The legend EST. 1988, as we previously said, is depicted in such relatively small lettering that many consumers will not notice it or, if they did, reach the conclusion that the mark as a whole connotes a company. Moreover, at least some of the beverages for which Plaintiff uses its mark OLÉ are designed to appeal to a Hispanic clientele,[27] so consumers who are familiar with Plaintiff's mark and encounter Defendant's mark on yogurt-based beverages are likely to view the words MEXICAN FOODS as merely a descriptor of the beverages. Thus, the presence or absence of MEXICAN FOODS in the parties' marks does not serve to distinguish them.

---

[27] For example, some of Plaintiff's advertising materials identify the goods as "Authentic Hispanic Drinks," Exhibit 4 to Fox discovery deposition, and Mr. Fox stated at that deposition that particular drinks, such as horchata, Jamaica, tamarindo and mango, are popular with Hispanics. 61 TTABVUE 23.

Accordingly, we find that Defendant's registered mark is legally identical to Plaintiff's pleaded mark, and that, because many elements in Defendant's applied-for mark have little or no source-indicating value, such mark is substantially similar to Plaintiff's pleaded mark in appearance, pronunciation, meaning and commercial impression. This *du Pont* factor weighs heavily in Plaintiff's favor. *See In re Majestic Distilling Co.*, 65 USPQ2d at 1204.

Turning next to the *du Pont* factors of the similarity of the goods and channels of trade, Plaintiff's goods are identified in its registration as "rice and milk-based beverages, namely horchata; and non-alcoholic and non-carbonated fruit juice beverages"; the opposed goods in Defendant's application are "dairy and fruit based non-alcoholic food beverages." The fruit-based beverages in both the registration and application are legally identical.[28] Further, because the goods are in-part legally identical, they must be presumed to travel in the same channels of trade to the same class of purchasers. *See In re Viterra Inc.*, 101 USPQ2d at 1908; *Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ2d 1001, 1005 (Fed. Cir. 2002).

The goods sought to be cancelled in Defendant's registration are "yogurt-based beverages"; Plaintiff's registration includes "horchata," a rice and milk-

---

[28] We need not discuss the relatedness of the dairy beverages in Defendant's application and Plaintiff's goods, since if there is a likelihood of confusion with any of the goods in the class, likelihood of confusion must be found. *See Tuxedo Monopoly, Inc. v. General Mills Fun Group*, 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981).

based beverage. Where identical marks are involved, as is the case here, the degree of similarity between the parties' goods that is required to support a finding of likelihood of confusion declines. *Teledyne Technologies Inc. v. Western Skyways Inc.*, 78 USPQ2d 1203, 1207 (TTAB 2006); *In re Opus One Inc.*, 60 USPQ2d 1812, 1815 (TTAB 2001). Defendant points out that horchata is a "rice and milk-based beverage," not a yogurt-based beverage, and that there are specific differences in the beverages, and therefore they are not interchangeable. However, the question is not whether consumers will confuse the beverages, but whether they will confuse the source of the beverages. *Bd. of Regents, Univ. of Tex Sys. v. S. Ill. Miners, LLC,* 110 USPQ2d 1182, 1189 (TTAB 2014) ("The issue, of course, is not whether purchasers would confuse the goods or services, but rather whether there is a likelihood of confusion as to the source thereof."). "'[I]t is not necessary that the products of the parties be similar or even competitive to support a finding of likelihood of confusion.' Instead, likelihood of confusion can be found 'if the respective products are related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that they emanate from the same source.'" *Coach Servs. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715 (TTAB 2007)). Here, the parties' goods are both beverages, and both are dairy-based. Further, prior to selling its yogurt-based beverage, Defendant sold  pre-mixed

packaged horchata and horchata concentrate, Moreno test., 90 TTABVUE; Greenway test., 88 TTABVUE, thus showing that both horchata and yogurt-based beverages can emanate from a single source. In view of the foregoing, including the fact that the parties' marks are identical, we find that the *du Pont* factor of the similarity of the goods favors Plaintiff.

As for the channels of trade with respect to the goods in Plaintiff's registration and Defendant's registration, because, in light of our determination on Defendant's Section 18 request, there are no restrictions in the identifications, the goods must be deemed to travel in all appropriate channels of trade for such goods. *Citigroup Inc. v. Capital Bank Group Inc.*, 98 USPQ2d at 1261. Plaintiff has shown that its horchata beverage has been sold to such retail establishments as markets, food stands in a grocery/superstore,[29] fast food restaurants and taquerias. Defendant has acknowledged that its yogurt-based beverages can also be sold in some of the same outlets; in fact, Defendant's proposed restriction to its own identification of goods is for sales in "retail food and grocery stores, supermarkets, mass retailer, superstores, and Mexican sit-down restaurants or taquerias." Moreover, the goods can be sold to the same classes of consumers, which would include the general public. Thus, the *du Pont* factor of the channels of trade favors Plaintiff.

---

[29] As noted in footnote 20, this is the way Defendant's owner characterized this outlet.

The factor of the conditions under which sales are made also favors Plaintiff. The ultimate purchasers of the beverages are members of the general public. Both Plaintiff and Defendant agree that both parties' goods are relatively inexpensive, and can be purchased on impulse. Plaintiff's brief, 80 TTABVUE 35; Defendant's brief, 89 TTABVUE 41. Purchasers of relatively inexpensive, comestible goods subject to frequent replacement have been held to a lesser standard of purchasing care. *Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 223 USPQ 1281, 1282 (Fed. Cir. 1984). This *du Pont* factor favors Plaintiff.

The next *du Pont* factor we consider is "the fame of the prior mark." Defendant claims that this factor favors it, pointing to evidence of the fame of *its* mark. However, Defendant is not the prior user of the mark, and therefore, by definition, any reputation accruing to Defendant's mark is not relevant for consideration of this factor. In fact, to the extent that a later user of a mark would saturate the market with its advertising and sales, this could lead to reverse confusion, in which the prior user's rights would be adversely affected by the later user's activities. *See generally In re Shell Oil Co.*, 992 F.2d 1204, 26 USPQ2d 1687, 1690 (Fed. Cir. 1993). With respect to Plaintiff's showing under this factor, Plaintiff does not claim that its mark is famous, and certainly the evidence submitted by Plaintiff would not be sufficient to demonstrate fame.[30] This *du Pont* factor is neutral.

---

[30] Again, because these figures were submitted under seal, we do not detail them in this opinion.

The sixth *du Pont* factor is the number and nature of similar marks in use on similar goods. There is no evidence of current third-party use. The only evidence that Defendant points to are consent agreements found in Plaintiff's registration file. The file shows that, during the examination of the application which eventually issued as Plaintiff's registration, the Examining Attorney refused registration based on registrations owned by HEB Grocery Company, LP and IP Brands, LLC, and also advised of prior pending applications by these registrants that, if they issued into registrations, might also be cited against Plaintiff's application. Plaintiff then submitted consents by these third parties. The consent by HEB Grocery, which was signed on December 21, 2005, states that HEB Grocery is the owner of U.S. Registration No. 2645987 for the mark CAFÉ OLE & Design for use in connection with coffee, and is the owner of pending U.S. Application Serial No. 78267945 for the trademark CAFÉ OLE for use in connection with ready-to-drink coffee-based beverages. The consent by IP Brands, which was signed on October 6, 2006, states that IP Brands is the owner of U.S. Registration No. 2727542 for the mark OLÉ for use in connection with coffee, and the owner of pending U.S. Trademark Application Serial Nos. 78506431 for LATTE OLE, and 7855736 for FRAPPE OLE. The response accompanying these consents, filed on October 17, 2006, advised the Examining Attorney that IP Brands agreed to always use the phrase GOURMET COFFEE in association with OLE and only use such phrase in connection with coffee and

coffee-based beverages, and that HEB Grocery agreed to always use the term CAFÉ in association with OLE and only use this mark in association with coffee and coffee-based beverages. Plaintiff made the further statement in its response that these registrants "only use such phrase in connection with coffee and coffee-based beverages," and that in light of the agreements Plaintiff will not use OLÉ in association with any coffee or coffee-based beverage goods.

Although third-party registrations are not evidence that a mark is in use, *see In re Albert Trostel & Sons Co.*, 29 USPQ2d 1783 (TTAB 1993), we treat Plaintiff's statement in its response that the registrations "only use such phrase in connection with coffee and coffee-based beverages" as an admission that the third-party registrants' marks were in use for coffee and coffee-based beverages on October 17, 2006, when it filed this response. Nonetheless, we do not treat this statement as an admission that the marks were in use at the time of trial of the instant proceedings, nor is there any evidence to show such use at this time.

Defendant also refers to the consent agreements to argue that Plaintiff's mark is entitled to a limited scope of protection, because "Plaintiff acknowledged restriction on the scope of its rights in the OLÉ mark based on these third-party uses." Brief, 89 TTABVUE 42. In *In re Majestic Distilling Co.*, 65 USPQ2d at 1204, the applicant pointed to the fact that the owner of the cited registration had entered into agreements with third parties, thereby

showing that the registrant had taken the position that there was no likelihood of confusion with respect to others' usage of those marks in connection with their particular goods. The Court was not persuaded by this argument. In particular, the Court pointed out that the consent agreements between the registrant and third parties were "several years old and may not reflect current views." Therefore, the registrant "may no longer hold the same view with respect to likelihood of confusion as it did when it executed those third-party agreements or when it argued to the PTO that there was no likelihood of confusion." 65 USPQ2d at 1206. Again, in the present case the consents were signed in 2005 and 2006. Further, the goods of the third parties in the consents at issue were coffee and coffee-based products. Defendant's goods, on the other hand, are yogurt-based beverages, and as we have already discussed, there is a close relationship between these goods and Plaintiff's horchata.

Moreover, Plaintiff has used its mark OLÉ for over thirty years, and the mark is only somewhat suggestive of the goods, conveying a slight laudatory connotation that these are goods that one would cheer for. (Defendant has translated OLÉ in its Registration No. 3161729 as "Bravo"; we take judicial notice that it is also listed in English-language dictionaries as an interjection "used as a shout of approval, triumph, or encouragement"[31]). Thus, we agree

---

[31] Dictionary.com Unabridged, based on *Random House Dictionary*, © 2014. The Board may take judicial notice of dictionary definitions, *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imp. Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983), including online dictionaries that exist in printed

with Plaintiff that its mark is deserving of a degree of protection that would extend to preventing another to own a registration for the identical mark for closely related goods, or for a substantially similar mark for legally identical goods.

The next *du Pont* factors we consider are the nature and extent of any actual confusion, and the length of time during and conditions under which there has been concurrent use without evidence of actual confusion. There is no evidence of any actual confusion. However, Defendant admits that "the geographic overlap has been minimal to date," 89 TTABVUE 42, and therefore we find that the absence of such evidence has no real probative value. *See, e.g.*, *Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana Inc.*, 98 USPQ2d 1921, 1935 (TTAB 2011); *Carl Karcher Enters., Inc. v. Stars Restaurants Corp.*, 35 USPQ2d 1125, 1133 (TTAB 1995). Accordingly, we agree with Defendant that these *du Pont* factors are neutral.

Finally, both parties have discussed the question of "natural zone of expansion," so we address those arguments as well. Plaintiff's arguments in effect go to the *du Pont* factor of similarity of the goods, essentially contending that we should consider the natural zone of expansion of Plaintiff's goods to determine the relatedness of the goods. In general in an inter partes situation, the doctrine of natural expansion is used in connection with priority. Under this doctrine the first user of a mark in connection with

---

format or have regular fixed editions. *In re Red Bull GmbH*, 78 USPQ2d 1375, 1377 (TTAB 2006).

particular goods or services possesses superior rights in the mark as against subsequent users of the same or similar mark for any goods or services which purchasers might reasonably expect to emanate from it in the normal expansion of its business under the mark. *General Mills Inc. v. Fage Dairy Processing Industry SA*, 100 USPQ2d 1584, 1598 (TTAB 2011), *judgment set aside on other grounds*, 110 USPQ2d 1679 (TTAB 2014). Normally, this doctrine is used in the context of parties' dueling claims of priority. *Id.; cf. In re Kysela Pere et Fils Ltd.*, 98 USPQ2d 1261, 1266 (TTAB 2015) and *In re 1ˢᵗ USA Realty Professionals Inc.*, 84 USPQ2d 1581, 1584 (TTAB 2007), regarding zone of expansion in ex parte cases. In this case, the evidence is clear that Plaintiff is the prior use of the mark OLÉ on beverages, and that Defendant's "yogurt-based beverages" are closely related to Plaintiff's identified "milk-and-rice based beverages, namely horchata." Therefore, there is no need to apply a natural zone of expansion analysis.

Defendant takes a different approach with its argument, contending that beverages are within the natural scope of expansion of Defendant's goods. However, because we have found that it is Plaintiff, not Defendant, that has priority, Defendant cannot rely on an expansion of goods theory.

**Conclusion**

With respect to the opposition, priority is not in issue, and in any event we find that Plaintiff has shown that it has priority of use of its mark OLÉ for rice and milk-based beverages, namely horchata, and non-alcoholic and non-

carbonated fruit juice beverages. Plaintiff has also shown that Defendant's use of its applied-for mark, OLÉ MEXICAN FOODS and design for the goods in Class 29, "dairy and fruit based non-alcoholic beverages," and that Defendant's use of its registered mark, OLÉ, for "yogurt-based beverages," is likely to cause confusion with the mark and goods in Plaintiff's registration. Further, because Defendant deleted certain goods in its two registrations (yogurt-based beverages and herbal teas in Registration No. 3161729 and herbal teas in Registration No. 3223608) without the consent of Plaintiff, judgment is entered in favor of Plaintiff on its pleaded ground of likelihood of confusion with respect to those goods.

**Decision:**

Defendant's counterclaim to restrict Plaintiff's Registration No. 3315078 is dismissed. Plaintiff's Opposition No. 91189001 to Application Serial No. 77426608 with respect to the goods in Class 29 is sustained. Plaintiff's petition to partially cancel Defendant's Registration No. 3223608 (Cancellation No. 92048698) with respect to yogurt-based beverages in Class 29 and herbal teas in Class 30, and Plaintiff's petition to partially cancel Defendant's Registration No. 3161729 (Cancellation No. 92049127) with respect to the goods "yogurt-based beverages" in Class 29 and "herbal teas" in Class 30 are granted.

Because the opposition was brought against Class 29 of Defendant's Application Serial No. 77426608, the application will go forward to

publication solely for the goods in Class 30, namely, "tortillas." Defendant's Registration No. 3223608 will have the goods "yogurt-based beverages" deleted from Class 29. The other goods for which the petitions to cancel have been granted have already been deleted from the registrations at Defendant's request.

As noted herein, Plaintiff is allowed until THIRTY (30) days of the mailing date of this decision to file a copy of its notice of reliance for the public record, with only truly confidential material redacted, and Defendant is allowed the same period to file the transcripts of the testimony depositions, with exhibits, of its three witnesses, Moreno, Greenway and Harper, with only truly confidential material redacted, failing which the unredacted papers in their entireties will become part of the public record.